## Cravens v. Poston.

(Decided May 25, 1934.)

MARCUS C. REDWINE and CLIFFORD E. SMITH for appellant.
BENTON & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

Noel P. Cravens brought this action in the Clark circuit court against Minta Poston to recover damages for personal injuries received by the appellant while employed by the appellee and engaged in unloading from a truck a heavy safe.

At the conclusion of plaintiff's testimony, the trial court sustained the motion for a directed verdict in favor of the defendant, and the plaintiff appeals.

Plaintiff by his petition alleged that at the time of receiving his injury the defendant, Minta Poston, was

operating a general storage and hauling business at Winchester, Ky., in the operation of which she regularly employed three motortrucks and three and more than three employees. Further he pleaded that on or about November 18, 1931, while working for the defendant, he was, together with three other employees then in her service, engaged in moving and delivering a heavy iron safe, weighing some 5,000 pounds, from one building to another in Winchester, and that while engaged in unloading the same from the truck over a tramway, he was injured by reason of the defendant's negligence in failing to furnish a sufficient number of men to safely unload it.

The evidence is to the effect that upon this occasion, while the crew was doing the work of removing the safe from the bank onto the truck, the defendant was present directing and using six men, including the plaintiff, in its removal; that she then dismissed two of the six men, with the direction that the appellant and the three others haul and deliver the safe to the other building, without further accompanying them or directing them as to how they were to unload the safe.

The plaintiff and his witnesses testified that the four of them to whom was left and intrusted the work of unloading and delivering the safe discussed how it should be done, when it was agreed by them that they would place skids, eighteen feet long, from the end of the truck leading to the ground, with props placed underneath the truck end and also the tramway thus made, when two of them would, with crowbars, slowly prize the safe from off the truck onto the tramway, while the other two, including the plaintiff, would, with their crowbars placed under the front wheels of the safe, hold back its advancing while being slowly pushed forward by the two men at the rear. It is further in evidence that the defendant had directed that a block and tackle be put in the truck for use in unloading the safe, but plaintiff testified that he and his three fellow employees decided that the stated crowbar method of unloading the safe was better, both for the reason he did not use the block and tackle for handling heavy loads, such as was the safe, and also because he did not have enough men present for its proper use.

Witnesses testified that the eighteen-foot tramway provided was some 36 inches wide and that as the safe

was being lowered over it, Davis, one of the helpers who was stationed in front of the safe on the tramway with plaintiff to hold back and check the safe's advance, let his crowbar slip from under one of its front wheels, with the result that the safe, thus released on the incline, pressed with such weight and force against plaintiff's crowbar as to force the same violently backward, striking him in the chest and seriously injuring him.

The plaintiff by his petition alleged that the defendant regularly engaged, in running her hauling and storage business, more than three employees and, basing his action upon the theory that his employer, in so regularly operating her business, came within the provisions of the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), to such effect he and his witnesses testified that while he and one Stanley Bailey were the only two men regularly employed and on her pay roll, John Davis and Cal Murray were, as frequent helpers, kept on what might be called a waiting list, and usually called by the office every morning to see if they were needed for that day's special work or, upon failing to come, if needed they or others were sent for; that they were thus frequently employed through being used, if present or available, whenever the nature of the day's hauling jobs called for extra help. It was admitted, however, that the latter two colored employees were not carried on the defendant's pay roll and were at times engaged in other steady employment, when they would not be called or engaged by the defendant upon the frequent occasions when extra help was required and employed.

It is further shown by the evidence that the plaintiff had for a period of some three years or longer been regularly employed by the defendant and put in charge of one of her two motortrucks used in her hauling business and that he had been given and exercised the right, as such mover and driver, to call in extra help to assist in his hauling work when found needed, even without securing defendant's special permission therefor; that this discretionary right of hiring helpers was exercised by plaintiff, in common with Stanley Bailey, defendant's other regular employee, who had charge of the other truck.

The defendant by her answer denied the allegations of the petition that she regularly engaged in her hauling business three employees or more than three employees,

or that she regularly operated as many as three motor-trucks, or that on account of her alleged negligence in failing to furnish a sufficient number of competent workmen to do the work mentioned in the petition the plaintiff received his injury as alleged, or that it was caused through her alleged negligence in failing to furnish the same number of men to unload the safe as had been used to load the same, or that but for such alleged gross negligence plaintiff's injuries would not have occurred.

After traversing all the allegations of the petition, she further pleaded that plaintiff, on the occasion mentioned, was guilty of such contributory negligence that, but for which, he would not have been injured. Further she averred that she was not present when plaintiff claims to have been injured while attempting to unload the safe and that plaintiff was at such time himself the foreman in charge of the work of unloading it; that he himself, acting as foreman of the crew, gave the directions as to how the safe should be unloaded and knew the danger of unloading it in the way it was unloaded; further, that he so acted against the advice of some of the men then engaged with him and thereby assumed the risk of unloading the safe in such manner; and that the responsibility for his injury, caused by his own act, rested upon him.

The plaintiff, as stated, based his action on the theory that as the defendant was affected by the provisions of the Workmen's Compensation Law, but had failed to operate thereunder, she was deprived of the right to defend the action on the grounds of contributory negligence or assumed risk, yet also alleged that defendant was guilty of gross negligence in failing to furnish appellant a sufficient number of men with which to safely do the work of unloading the safe she directed him to do or adequate means or instruments for safely doing it.

Plaintiff's evidence showed in substance the facts as above set out, and that he was, when injured in unloading the safe, in charge of that work, which was in keeping with his usual and customary duty and service as a regular employee of the defendant intrusted with the general conduct and carrying on of her hauling and moving business. Also the evidence showed that, while the making of the hauling contracts was looked after by the defendant, the doing of the work and manner of performing it was intrusted and usually left to her two

regular employees, the plaintiff and Stanley Bailey, having charge of and running her two trucks employed in carrying on her business.

Upon the trial of the cause, the jury, at the conclusion of plaintiff's evidence, was upon motion of the defendant directed to return a verdict in her favor, which was done and judgment accordingly entered thereon.

The appellant seeks a reversal of the judgment as erroneous in giving a directed verdict for the defendant and dismissing his petition upon the grounds that, under the allegations of the petition and proof heard in support thereof, the defendant was shown to be an employer affected by and coming within the provisions of section 4880 of the Workmen's Compensation Act, as being an employer "having three or more employees regularly engaged in the same occupation or business" and, as such, that she, having failed to operate thereunder, was by the further provisions of section 4960 of the act deprived of the therein designated defenses of the employee's contributory negligence, negligence of fellow servant, and assumed risk of injury by employee, in this action by her employee seeking damages for an injury arising out of and in the course of his employment.

It is not here in dispute that plaintiff's injuries were accidental and occurred in the course of his employment, while helping, as one of four employees of the defendant then engaged in her service, in unloading a heavy safe from her truck. Section 4880 of the Workmen's Compensation Act declares that its provisions shall apply, subject to named exceptions, to those employers having three or more employees regularly engaged in the same occupation or business. The defendant by answer denies that she had three or more employees regularly engaged in this, her storage and hauling business, and therefore that she did not come within the designated class of employers affected by the provisions of the act and was not by the provisions of section 4960 deprived of making the defenses therein designated in this action of her employee, seeking damages for personal injury alleged sustained by him by accident arising out of and in the course of his employment.

In this claim and defense she is to some extent cor-

roborated by the evidence of both the plaintiff and some of his witnesses to the effect that the defendant had only the two white men, the plaintiff Cravens and Bailey, on her pay roll and in her daily service as regular employees, while the others used in the hauling business were only hired as special helpers to assist her regular employees upon special jobs calling for extra assistance, when such extra men would be called, or picked up, to assist in doing the special job.

This court has not as yet been called upon to construe the phrase of the act, "employees regularly engaged," as to just what character of employment and service is thereby required of an employee to be regularly engaged in the same occupation or business, nor do we feel here required to construe the words as to what form and character of employment was intended by the language of the legislative enactment to be thereby described and required, in view of the conclusion reached by us as to the here controlling question as to whether or not the defendant was by the evidence here shown to have been guilty of any act of negligence responsible for or causing the appellant's injuries.

The rule is well settled that even though an employer, affected by the provisions of the act, fails to elect to operate thereunder and is by reason of such failure deprived of the defenses set out in section 4960 of it, yet, notwithstanding his loss of the right to defend upon such grounds, he is nonetheless not liable to the injured employee unless there is shown some negligence on the employer's part causing the injury. Deboe's Adm'r v. West Kentucky Coal Co., 216 Ky. 198, 287 S. W. 568; West Kentucky Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S. W. (2d) 479; Ford v. Perkins-Bowling Coal Corp., 236 Ky. 36, 32 S. W. (2d) 544; Gibraltar Coal Mining Co. v. Collins, 237 Ky. 765, 36 S. W. (2d) 372; High Splint Coal Co. v. Bailey's Adm'r, 238 Ky. 217, 37 S. W. (2d) 22; Brooks v. Arnett, 253 Ky. 491, 69 S. W. (2d) 1029, 1030.

It is both pleaded and argued by appellant that defendant was guilty of gross negligence in failing to furnish him for his unloading of the safe a crew of six men, or the same number as were used in loading the safe onto the truck; but the petition does not allege that the services of six men were required or necessary for safely unloading the safe or that he was directed by the

defendant to unload it with his three helpers in the particular way and manner he did, but rather it is shown he was left to act upon his own judgment, as an experienced employee in the hauling business, to himself decide as to what was a safe and proper way in which to do the work.

The defendant was not present at the time, directing plaintiff to do the things or take the risks which he did and took upon his own initiative and judgment, after he and his helpers had consulted and agreed that the method adopted for moving the safe was the best and safest one. Plaintiff was furnished also a block and tackle equipment which was present in the truck, at the time, had they desired to use it as a better plan for unloading the safe. Plaintiff stated that it, however, was old and also was regarded as impractical for use unless six men were used for operating it. As to this, however, it was shown that plaintiff was authorized to call in such extra men as he thought were required for doing heavy work; in fact, he testified that he was authorized, when out on jobs of moving work for defendant and when she was not present, to hire such needed extra men without first asking defendant's permission.

Also, it appears by the evidence that the eighteen-foot gangway, provided by the work crew for lowering the safe thereover, was but three feet wide, which fact makes it difficult to see how more than the two men used on the gangway in front positions could have been well or safely there used when following the chosen plan of unloading it over the narrow gangway with crowbars.

It is to be noted that the evidence was to the effect also that plaintiff's attention was at the time called to the fact by his co-worker Bailey that his adopted plan for moving the safe by "pinching it down" with crowbars was unsafe for the men in the front positions, and Bailey stated that he was unwilling to stand in front of the safe while it was being lowered, but that plaintiff, who had been longest in the defendant's employ and most experienced in the work, despite the warning received, yet chose to so proceed with that plan of unloading.

On the other hand, it is not claimed that the defendant knew that such plan of unloading the safe would be followed, or that she knew such method if followed would be a dangerous one, or that the plaintiff did not himself

realize that it was a dangerous one, or that he made any complaint to defendant that the force of four men furnished was inadequate for safely doing the work, or that she knew or could have known such fact.

The duty to furnish sufficient help rests upon the principle that the master is bound to furnish proper tools and appliances and where the nature of the work requires men to do it "the men engaged therein are classed as appliances." The applicable rule as to the liability of a master for the injuries suffered by his servant, under such circumstances as here by the evidence were shown to exist, was clearly announced in the case of Green River Light & Water Co. v. Beeler, 193 Ky. 675, 237 S. W. 1, 2, where it was thus stated:

"It is conceded that the company was an employer affected by the provisions of the Workmen's Compensation Act, and that it had not elected to operate thereunder. That being true, it could not avail itself of the defenses of contributory negligence, fellow servant, and assumption of risk. Section 4960, vol. 3, Kentucky Statutes. However, to entitle plaintiff to a recovery, it was necessary for him to show that his injuries were caused by the negligence of defendant, and it is insisted that the evidence of negligence was not sufficient to take the case to the jury."

And again as it was stated in the cited Brooks Case, supra:

"It is a firmly established rule that the master must exercise ordinary care to furnish his servant with reasonably safe instrumentalities with which to work and to exercise ordinary care to furnish a reasonably safe place wherein the servant must work. The place furnished must be reasonably safe under the circumstances. Where the plaintiff relies upon defective tools or instrumentalities or upon the failure of his employer to furnish him a reasonably safe place in which to work, he must allege and prove a knowledge of the danger by the defendant and want of such knowledge of danger by himself."

There was not given any evidence showing how the accident could have been avoided, when using the same method of unloading the safe, had the larger number of

·six men been employed in its removal or that the larger number of six men were required for safety in doing the work. The evidence as given by the plaintiff and his witnesses, as to the facts attending plaintiff's injury, is not such as could support the inference that plaintiff's accident and resulting injury was due to any act of negligence on the part of the defendant. The showing of such causal negligence was necessary to support a recovery by plaintiff.

Therefore, for the reasons stated, we consider that the trial court properly sustained the defendant's motion for a directed verdict in her favor, and the judgment is affirmed.